# Supreme Court of the Navajo Nation

---

### The Navajo Nation, Petitioner/Appellant,
### v.
### Paul Redhouse, Chairman; and
### Members, Navajo Board of Election Supervisors,
### Respondents/Appellees.
### Decided November 14, 1990

---

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Herb Yazzie, Esq., Attorney General, for the Navajo Nation, Window Rock, Navajo Nation (Arizona); John A. Chapela, Esq., for Interveners, Window Rock, Navajo Nation (Arizona); and Paul D. Barber, Esq., for the Navajo Board of Election Supervisors, Albuquerque, New Mexico.

Opinion delivered by BLUEHOUSE, Associate Justice.

In this case, the Navajo Nation appeals from a decision of the Navajo Board of Election Supervisors (Board) to prevent the Board from conducting elections for the office of Navajo Nation Council Delegate on November 6, 1990, and elections for the offices of President and Vice President of the Navajo Nation on November 20, 1990.

## I. FACTS

On October 23, 1990, the Navajo Nation Council (Council) passed Resolution CO-64-90. This resolution amended Title 11 of the Navajo Election Code to establish an order of succession for candidates to the offices of President, Council Delegate, and Board members, Grazing Committee members, and School Board members. This resolution also amended a section in the Navajo Election Code, 11 N.T.C. § 3 (1990), by adding subsection E to section 3 as follows:

> (E) The Board of Election Supervisors is hereby authorized to postpone for a maximum of sixty (60) days any Navajo election for the purpose of printing new ballots required because of changed circumstances.

On October 24, 1990, the Board passed Resolution BOESO-030-90, which resolution provided that the Navajo Nation General Election for council delegates and president and vice president was going to be held on November 6, 1990.

On October 30, 1990, the Council passed Resolution CO-80-90. By this resolution the Council postponed the 1990 Navajo Nation General Election for council delegates and president and vice-president to December 18, 1990, contrary to the Board's decision in Resolution BOESO-030-90. The Council further amended newly added subsection E as follows:

> (E) The Board of Election Supervisors is hereby <u>directed</u> to postpone for a <u>minimum</u> of <u>thirty (30)</u> and a maximum of sixty (60) days any Navajo Election for the purpose of printing new ballots required because of changed circumstances. (Underlined language denotes new language.)

11 N.T.C. § 3 E. (1990).

On November 3, 1990, the Board passed Resolution BOESN-035-90. In this resolution the Board decided to hold the General Election for Navajo Nation Council Delegates on November 6, 1990 and the General Election for offices of President and Vice President on November 20, 1990.

Resolution BOESN-035-90, setting election dates for November 6, 1990 and November 20, 1990, conflicts with the resolution passed by the Council postponing the election to December 18, 1990. The Attorney General noted these conflicts and the confusion the resolutions have created and, on November 5, 1990, appealed the Board's Resolution BOESN-035-90 to this Court.

This action was filed at 10:00 a.m. on November 5, 1990, and the Court accepted it and granted it immediate priority under Rule 27, Navajo Rules of Civil Appellate Procedure. A hearing was conducted at 3:00 p.m., the afternoon of November 5, 1990, at which time the Navajo Nation appeared by Herb Yazzie, Esq., Attorney General, who submitted arguments. The Court permitted eleven individuals, candidates for the offices of President, Vice President, and Council Delegate, to appear as intervenors. They were represented by John Chapela, Esq., who argued on their behalf. The Board appeared by its chairman and members because its attorney, Paul D. Barber, Esq., of Albuquerque, New Mexico, was unable to make a physical appearance due to the shortness of the notice. He waived a personal appearance and submitted a response by means of FAX transmission, which was accepted and considered by the Court.

The Court took the matter under advisement immediately following argument, and reconvened to deliver an oral judgment.

At the time of oral argument, the Attorney General, on behalf of the Navajo Nation; Mr. Chapela, on behalf of the eleven candidate intervenors; and the Chairman of the Board, on the Board's behalf, stipulated that this matter should be considered as an appeal from a November 3, 1990 decision of the Board setting elections for Council Delegates on November 6, 1990 and elections for the offices of President and Vice President on November 20, 1990. Upon that stipulation, and the urging of the parties before the Court that it proceed to adjudicate the merits of the case, the Court entered its oral orders affirming the decision of the Board with respect to the elections. This opinion makes the oral decision of the Court a matter of record.

# II. JURISDICTION

As a preliminary matter, this Court has jurisdiction over this case under authority of its appellate jurisdiction. The parties stipulated before the Court at oral argument that the Court can accept this case as an appeal. As authority, the parties agreed that the Navajo Nation can appeal a decision of the Board pursuant to 11 N.T.C. § 321(B)(4) (1990) and under authority vested in the Attorney General to represent the Navajo Nation in all appeals where the Navajo Nation is a party pursuant to 2 N.T.C. § 1964(f) (1990).

# III. MERITS OF THE BOARD DECISION

The ultimate issue before the Court is whether the Navajo Board of Election Supervisors' decision in Resolution BOESN-035-90 is in accordance with established law.

### A. Effect of Council Resolution CO-64-90

The Board is an independent entity, responsible only to the Navajo Nation Council, pursuant to 2 N.T.C. § 871(a) (1989). It has the power to administer, implement and enforce the Navajo Election Code, and the power to oversee and supervise generally all tribal elections. 2 N.T.C. § 873(b) (1), (2). A vote of two-thirds of a quorum of the Navajo Nation Council is necessary to modify or change such powers. Navajo Nation Council Resolution CD-68-89, Res. Par. 6 (December 15, 1989). The Board carries out its powers and authority to conduct Navajo Nation elections pursuant to the Navajo Election Code of 1990, Title Eleven, Navajo Tribal Code.

On October 19, 1990, the Council enacted Resolution CO-64-90, which amended 11 N.T.C. § 3 by adding a new subsection E, giving the Board the authority to postpone elections when new ballots are required because of changed circumstances. No arguments have been presented to show that this resolution is invalid. Thus, that resolution is a valid amendment to the Navajo Election Code.

Pursuant to such amendment, the Board considered the question of when to conduct elections for the offices of Council Delegate, President, and Vice President, taking into consideration grievances and protests filed by "at least" 53 individuals, as well as the ability of the Board and its Election Administration to conduct elections. The actions of the Board were consistent with the Election Code of 1990 and its power under 2 N.T.C. § 873 (1989).

### B. Effect of Council Resolution CO-80-90

The Navajo Nation Council, in special session on October 30, 1990, adopted Resolution CO-80-90 which, among other things, fixed the date for elections for

all open Navajo Nation public elective offices on December 18, 1990. The record shows, and the parties admit and stipulate, that the proposed resolution was not reviewed and signed by either the Controller or the Legislative Counsel to the Navajo Nation Council. It also was not reviewed and commented on by the Board.

Two, N.T.C. § 164 (1989) provides that "no proposed resolution shall be considered" unless such persons review and sign the proposed resolution, and even when a proposed resolution not on the agenda is placed there by a two-thirds vote of a quorum of the Council, it requires the same review. 2 N.T.C. § 164 (5) (1990).

The statute, 2 N.T.C. § 164 (contained in comprehensive 1989 amendments to Title 2 of the Navajo Tribal Code, which are intended to establish the fundamental structure and operations of the Navajo Nation Government), is clearly mandatory rather than directive, and its procedures are a condition precedent to the enactment of valid legislation. The required procedure was not followed in the enactment of Council Resolution CO-80-90, and the same is void under the clear wording and meaning of 2 N.T.C. § 164.

Given the validity of Navajo Nation Council Resolution CO-64-90 (October 19, 1990) and the invalidity of Navajo Nation Council Resolution CO-80-90 (October 30, 1990), the Board properly rendered its decision in Resolution BOESN-035-90 (November 3, 1990), and in accordance with established law.

## IV. DECISION

The decision of the Navajo Board of Election Supervisors in its Resolution BOESN-035-90 (November 3, 1990), with respect only to the fixing of November 6, 1990 elections for Navajo Nation Council Delegates and to the fixing of November 20, 1990 for the elections for offices of President and Vice President, is hereby AFFIRMED. The alternative petition for a writ of mandamus or for declaratory or injunctive relief is hereby DISMISSED.